vs. US Bank, National Association, etc. et al. Good morning, Mr. Lutton. Good morning, Your Honor. I'm honored to be here. May it please the Court if I may have three minutes for rebuttal? Yes. And may I also proceed directly to the issues in the case? Yes. We'd appreciate that. Your Honor, this appeal is in two parts, essentially. The first has to do with arguments that Mills raised in the court below that were simply not addressed. And the second has to do with a number of arguments that were raised, which were addressed, but to which we feel the lower court applied the wrong or an incorrect analysis. Now, one of the most important examples, I think the most important example, of an argument that was made in the lower court that was not addressed, is that the foreclosing entity in this case, One West, did not own the mortgage and the note at the time of the foreclosure, and that it had to own both instruments. Now, that argument was based entirely on the mortgage contract itself, Your Honor. The mortgage contract states plainly, unequivocally, and repeatedly at paragraph 22, that only the lender may exercise the statutory power of sale. And the promissory note defines the lender as the person entitled to payments. There's considerable overlapping and cross-reference between the mortgage contract and the promissory note. And our contention, again, is that One West did not own the note at the time of the foreclosure. Now, the appellees acknowledged that One West did not own the note, that it was not entitled to payments, that it was not a successor and a sign of the originating lender. Rather, their argument is that U.S. Bank owned the note and that One West was acting as an agent for U.S. Bank, and that because of that, One West had the authority to exercise the power of sale, that it essentially held both the note and the mortgage at the time of the foreclosure. Now, in support of that argument, they have submitted in the lower court, and again before this court in their supplemental appendix, the entire pooling and servicing agreement of the trust, which included a Sarbanes-Oxley certification, which means essentially that they were vouching before a federal agency that the financial information contained in these various documents filed with the Securities and Exchange Commission were in fact the truth. Now, the problem with that, and in fairness, the pooling and servicing agreement, I believe does in fact establish an agency relationship between One West and U.S. Bank. The problem, though, is I don't believe that they went far enough into the pooling and servicing agreement because when you do, when you get to the provision that deals with persons deemed owners, it states very explicitly and very plainly that the only persons entitled to payments are the certificate holders, and it goes on to expressly exclude the trustee, the depositor, and the servicer as being persons deemed owners. So in other words, U.S. Bank could not have owned the mortgage or the note at any time, particularly in this instance the note. Furthermore, there is nothing in the pooling and servicing agreement to suggest that there was an agency relationship between One West, the foreclosing entity, and U.S. Bank or the certificate holders. None. So U.S. Bank essentially has no connection to the real owners of the note and therefore no connection contractually to Mills, and finally no authority to enforce the mortgage agreement. Now, isn't this just, I mean, how do you reconcile this with Culhane? How do you get to separating the mortgage and the note in this manner in a way that's consistent with Culhane? Well, Your Honor, Culhane was the next issue I was going to get to. But in your brief you say all your accounts are really built on the bedrock of your Culhane argument. No, the opposition, Your Honor, based its arguments on Culhane. I did not do that. In speaking of the MERS issue, I stated that the lower court in this case did not provide any independent analysis of my Culhane argument but instead deferred or basically incorporated by reference the argument in Culhane that pertained to MERS and the mortgage, not the note. Right now I'm simply speaking of the note. I'd be more than happy to talk about Culhane. Just on your argument with respect to the note, you say that one, you must be saying, One West was not entitled to payments. Exactly. But they're the servicer. Well, they collect the payments, but they do not own. They're not the beneficial owner of them. Exactly. I don't understand what that has to do with it. I mean, clearly our Culhane statement says that our Culhane decision says that the – well, and actually Eaton in Massachusetts I think says the same thing. Once the mortgage and the note are reunited and they can be reunited in the servicer, that's the end of it. I'm just – tell me where I'm wrong. What am I missing here? Well, Your Honor, I argued that the servicer, One West, had to own both the note and the mortgage. It's a matter of contract law. I have never raised Eaton. You are correct, absolutely correct. Eaton was prospective. Its ruling came down after this case. It has no relevance in this case, no applicability. I am arguing this strictly by good old-fashioned contract law. It says right in paragraph 22 you have to own both the note and the mortgage, and Eaton has really no applicability here. Now, this is all spelled out in the pooling and servicing agreement. The appellees have argued that because of the fact that One West does not own the note or have the right to payments, that – well, they don't really explain their way out of that, Your Honor. What they have done instead is to claim that Mills has no standing to even talk about the pooling and servicing agreement, and I would dispute that. It's not an issue of standing here. Before you step back, Judge Lynch? No questions. Okay. Thank you. Good morning, Your Honor. May it please the Court, my name is David Thomas. I represent U.S. Bank, One West Bank, and Merz. At its core, this case and this appeal really is about what happens when a plaintiff pleads facts in a complaint and attaches documents to a complaint that undermine the plaintiff's theory of liability. And that, in this case, was that my client, One West Bank, did not have the power of sale when it foreclosed. I have three main points to make concerning the district court's order granting dismissal of this case. First, appellant's reliance on the statute of frauds, which is the primary argument in the brief, to argue around Culhane in Massachusetts law is based on a fundamentally flawed premise that the ownership of the mortgage controls whether or not Merz can hold bare legal title in a mortgage instrument and can be directed by the note holder to assign the mortgage at the appropriate time. Second, the appellant in this case pleaded the very facts that compelled the district court to conclude that the foreclosing entity here, again my client, One West Bank, lawfully obtained and exercised the power of sale to foreclose. And the district court essentially was compelled to dismiss the case based on those allegations. Third, there is no exception to the statute of frauds needed when dealing with Merz. It was actually satisfied in this case. As to my first two points, which are really intertwined, ownership of the... is not entitled to payments on the note. What's the law on that? Well, I believe Your Honor correctly stated the law in Eaton. Again, this was a pre-Eaton foreclosure. All One West needed to foreclose was the mortgage. Post-Eaton, you need to re-adjoin on the mortgage with the note, and One West is the servicer. Certainly, One West collected the payments. The trust is entitled to the payments, and One West is acting as an agent for the trustee of the trust, U.S. Bank. So One West, again, is just an arm of the entity that is accepting the payments of the trust. And I believe that the Culhane decision actually dealt with the language in the Merz mortgage that Mr. Ludden referenced, and I believe that's at page 292 in note 6, indicating that the language essentially does not require the note and the mortgage to be sold together. And Your Honor, if that's sufficient, thank you. The first two points, the ownership of the mortgage, it really is not the critical inquiry here at all. Rather, when we're dealing with a Merz mortgage, and when we have the debt split from the security instrument under mass law, the critical question is who holds the note. That's the critical question in this case because, as the Court is aware from Culhane, the note holder has the equitable right to require Merz to assign the mortgage either to the note holder or to the servicer at the appropriate time to exercise the power of sale. And what happens here, it was pled in the actual complaint, and this is contained in paragraphs 2 and 50, which are cited in our statement of facts, but I would direct the Court also to paragraph 74 of the verified amended complaint. The appellant actually pleaded that her note was sold into this trust. U.S. Bank was the trustee. She signed a mortgage appointing Merz as the nominee of the lender and the successors in the signs, and that one West Bank was the servicer. And all this occurred at some time in 2007. So therefore, there's no question after reading the complaint, the District Court concludes that U.S. Bank has the right to instruct Merz to assign the power of sale and the bare legal title to the servicer for the purposes of foreclosure. And that's exactly what occurred. And again, we've detailed those facts in our brief, and they all have record citations. This left the Court with absolutely no options. The appellant's claims, counts 1 through 23, were based on the faulty premise that my client, one West, did not have the power of sale. That leads me to my third point, which is the statute of frauds argument. And this was really the large, this is the biggest argument in the briefing in this case from the appellant's point of view. It was satisfied in this case. It was satisfied when the appellant signed the mortgage in writing, which conveyed the legal title and the power of sale to Merz. It was also satisfied when Merz, in writing, signed the Merz assignment and gave that in writing to my client, one West Bank. So we have two instances where that legal interest, again, which appellant conveyed, was assigned in writing to the appropriate parties. That's a complete chain of title. And again, that's the very interest that, within the mortgage, appellant agreed to. She agreed to give Merz and its successors in assigns, one West, the power of sale at the appropriate time. No more proof at all is needed under Massachusetts law. That rule was actually articulated in the Ibanez case from the SJC at page 53, where the SJC said to establish title, we could show a single assignment from the mortgagee of record. Merz, at all times, was the mortgagee of record. And there's also another case cited from the District of Massachusetts, the Jepson decision, where Judge Sorokin really does a good job of going through Culhane, all the standing issues in Merz. And we refer the court to that. It really matters not what happens during the securitization process, whether the mortgage document itself in a collateral file is sent to a bunch of different parties. And that's because, again, Merz is the mortgagee of record. We don't believe that the appellant has any standing whatsoever to address the process by which the document actually was conveyed. This is not the case where, for example, the appellant pleaded in the complaint that the actual note, for example, was transferred to a different trust during the process mistakenly, and that another lender and another service were requesting payments and tried to foreclose. Perhaps those facts, if they were pled or if they occurred, could have given rise to question whether my client actually held the note. None of that was pled. But what do you mean, counsel, when you say it doesn't matter that the mortgage may have gone to different folks in the securitization process? Right. But was the mortgage assigned even though the recordation didn't take place? My understanding of the securitization process is the note is sold, and the mortgage IT, the original lender, will take the collateral file, which contains the closing documents, the note, and the mortgage, and will actually give it. Oh, you just mean the document. You don't mean an assigned assignment. Correct. Exactly. Because, again, MERS is the mortgage you have record and holds that sort of placeholder. So your position is that there were no intermediate assignments. MERS got the mortgage actually not from mortgage IT, the lender, but directly in the refinancing from the borrower, right, in the first instance. Of course. Okay. So MERS has the mortgage, and the only assignment or the only evidence of assignment that you say exists is the assignment to OneWest. Is that accurate? Correct. And that's all that's been pled. My understanding of the servicing agreement, we refer to it as the PSA, but it's the trust document. When looking at the sections that Appellant cites, there are two types of mortgages. It talks about the non-MERS mortgages, and that requires a written assignment. With respect to the MERS mortgages, it just requires the depositor or the servicer to instruct MERS to change who's actually the trustee of the trust. There's no requirement that there's going to be a written assignment, which would make no sense because the purpose of MERS is to not have to do that written assignment. But, again, our position would be that the plaintiff, I'm sorry, the appellant, doesn't even get to challenge that process under Culhane and what's described in Jepson, because if anything occurred that was inappropriate, for example, and there's no evidence that there was, then it's an avoidable issue, and under the case law that we've cited, that's certainly not something that gives the plaintiff or the appellant standing to challenge the process. Then going back to what was pled, we believe that the district court had essentially no decision, no other option but to dismiss this case. Excuse me, counsel. Let me ask Judge Lynch if she has any questions at this time. No, I don't. Okay. Thank you. Your Honor, I'm happy to rely on the papers for the motion to amend, and the issue of newly discovered evidence. What I would like to state, though, that with respect to the briefing and the two notes that were provided, they just simply show that the mortgage IT, the original lender, endorsed the note to IndyMac. IndyMac then endorsed it in blank, which makes sense because the note was securitized, and the PSA does talk about endorsing these notes in blank, and the UCC certainly would allow that. There's no impropriety that is shown by showing two copies of the note at different times. Same argument with respect to the MERS assignment. We have a recorded copy and we have an unrecorded copy. There is no impropriety there. Thank you, Your Honor. Your Honor, it's very important to me to stress the fact that my argument is that the lower court in this case with regard to the MERS issue applied the wrong analysis. It applied the analysis of Culhane. Culhane was premised on the fact that MERS was the mortgagee. That is to say, the actual owner of legal title to the secured property. Now, we know this not only because the court expressly said so in its opinion, but also because it went to great lengths to apply what's known as the in-trust-for rule, which has grown out of Massachusetts law that allows the mortgage and the note to be held by separate persons. When that happens, the holder of the mortgage is deemed to hold the mortgage in a resulting trust for the holder of the note, and they have to be reunited at some point prior to foreclosure. All of that is premised on the fact that the note is separately held. My argument in this case is that MERS acted solely in a representative capacity, and I stand on the brief because I went through this at great length in the brief to explain that. If MERS acts in a representative capacity, and incidentally, the mortgage agreement refers repeatedly to MERS as a representative only as an agent or nominee. All of the MERS contracts, their rules, regulations, make very clear that MERS owns nothing. It acts in a representative capacity. The moniker mortgagee, which appears only once in the mortgage, is a fiction of convenience, basically. It was basically developed to allow MERS to remain the mortgagee of record, while at the same time, the mortgage actually was changing hands. And I would respectfully disagree with my brother. Massachusetts is a title theory state. Any time ownership of a mortgage is transferred, it has to be in writing. It is the transfer of an interest in land. They have acknowledged the fact that this was securitized. The pooling and servicing agreement, which they have admitted into evidence, states as a matter of sworn to proof that this mortgage was passed from the originating lender to a seller, sponsored to a depositor, finally to the trustee. There were multiple transfers. I submit to you that if MERS is the mortgagee, none of those assignments had to be memorialized or those transfers would have to be memorialized. That is cohen, but that is not the argument that's made here. And I feel very strongly that that simply should not be applied in this case. The question, and it is a matter of first impression in Massachusetts, at least at the appellate level, does the mere appointment of MERS as an agent or a nominee for multiple or consecutive owners of the mortgage somehow serve to transfer the actual ownership of the mortgage from one party to the next? There is no authority to that effect. There is no support for that argument. Agency law comes into play, and an agent can only transfer on behalf of a principal what the principal already owns. Judge Lynch, do you have any follow-up questions? No, I don't. Okay. Thank you, counsel. Thank you very much.